# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Scott Rilley, Michelle Kunza, Linda Gonzales
and Michael Gonzales, individually and on
behalf of the putative class,

        Plaintiffs,

v.

MoneyMutual, LLC, Selling Source, LLC,
and PartnerWeekly, LLC,

        Defendants.

Civil No. 16-4001 (DWF/LIB)

**MEMORANDUM
OPINION AND ORDER**

---

E. Michelle Drake, Esq., Jeffrey Laurence Osterwise, Esq., and John G. Albanese, Esq.,
Berger & Montague, PC; and Mark L. Heaney, Esq., Heaney Law Firm, LLC, counsel for
Plaintiffs.

Christina Rieck Loukas, Esq., and Joseph M. Windler, Esq., Winthrop & Weinstine, PA;
and Donald J. Putterman, Esq., Michelle L. Landry, Esq., and Tobias G. Snyder, Esq.,
Putterman Landry & Yu LLP, counsel for Defendants.

---

## INTRODUCTION

This matter is before the Court on the defendants' motion to dismiss for lack of

personal jurisdiction and motion to dismiss for failure to state a claim. (Doc. No. 11.)

For the reasons discussed below, the Court denies the defendants' motion to dismiss for

lack of personal jurisdiction, and the Court grants in part and denies in part the defendants' motion to dismiss for failure to state a claim.[1]

## BACKGROUND

Defendants collectively operate a lead-generating business for various payday lenders. Consumers would go to the defendants' website to fill out an application, and then Defendants would sell the application to lenders. The lenders would independently decide whether to lend consumers money.

Defendant MoneyMutual, LLC, maintained the website and advertised nationally on television and the Internet, but had no employees or officers. Defendant PartnerWeekly, LLC, was MoneyMutual's managing agent. PartnerWeekly would purchase the advertising, operate the website, and contract with lenders on behalf of MoneyMutual. Defendant Selling Source, LLC, is the sole parent of MoneyMutual and PartnerWeekly. Selling Source provided common services to the subsidiaries (like legal and accounting), but did not operate the day-to-day business. (Defs.' Memo. at 11.)

Plaintiffs are consumer-borrowers and have filed a purported class action against Defendants related to the payday loans. Plaintiffs first filed their complaint in Minnesota state court, naming only MoneyMutual as a defendant. MoneyMutual moved to dismiss for lack of personal jurisdiction. In *Rilley v. MoneyMutual, LLC* (*Rilley I*), the Minnesota Supreme Court affirmed the finding of personal jurisdiction. 884 N.W.2d 321 (Minn. 2016). After the United States Supreme Court denied MoneyMutual's petition for

---

[1] The Court cites to Defendants' Memorandum in Support of Their Motion to Dismiss (Doc. No. 32) as "Defs.' Memo."; Plaintiffs' Opposition (Doc. No. 41) as "Pls.' Opp."; and Defendants' Reply (Doc. No. 43) as "Defs.' Reply."

certiorari, 137 S. Ct. 1331, Plaintiffs amended the complaint to add Defendants

PartnerWeekly and Selling Source and to add a claim for violating 18 U.S.C. § 1962(c) of

the federal Racketeer Influenced and Corrupt Organizations (RICO) Act.  Defendants

then removed the case to federal court.  (Doc. No. 1.)

As relevant here, Plaintiffs have alleged in their Amended Complaint

(Doc. No. 1-2) claims for:  (1) violating Minnesota's payday-lending statutes, Minnesota

Statute §§ 47.60 and 47.601; (2) violating § 1962(c) of the federal RICO Act;

(3) violating the Minnesota Consumer Fraud Act, Minnesota Statute § 325F.69 and the

Minnesota False Statement in Advertising Act, Minnesota Statute § 325F.67;

(4) violating the Minnesota Uniform Deceptive Trade Practices Act, Minnesota Statute

§ 325D.44; (5) unjust enrichment; (6) civil conspiracy and aiding and abetting; and

(7) alter ego/piercing the corporate veil.  Defendants have moved to dismiss for lack of

personal jurisdiction and for failure to state a claim.

## DISCUSSION

## I.     Motion to Dismiss for Lack of Personal Jurisdiction

### A.     Legal Standard

Defendants seek to dismiss Plaintiffs' claims for lack of personal jurisdiction.  To

survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a

prima facie showing that personal jurisdiction exists; that is, a plaintiff must allege facts

to support a reasonable inference that defendant may be subjected to jurisdiction in the

chosen forum.  *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v.*

*Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  If, as is the case here, the

defendant denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quotation omitted). Once a defendant offers affidavits to challenge personal jurisdiction, "facts, not mere allegations, must be the touchstone" in determining whether personal jurisdiction exists. *Dever*, 380 F.3d at 1072 (citation omitted); *see also Abbasi v. Leading Edge Aviation Servs., Inc.*, Civ. No. 16-295, 2016 WL 4007571, at *3 (D. Minn. July 26, 2016).

### B. The Court has Personal Jurisdiction.

Personal jurisdiction is a two-step analysis: the Court must have statutory and constitutional authority for exercising jurisdiction over the defendant. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 4A *Fed. Prac. & Proc*. § 1069 (4th ed. 2017).

### 1. Statutory Jurisdiction

Federal Rule of Civil Procedure 4(k) provides that a court can exercise jurisdiction over a defendant if: (1) jurisdiction is allowed under the state long-arm statute; (2) the party is served within 100 miles of the courthouse; or (3) service is allowed under a federal statute. Plaintiffs argue that the Court has statutory jurisdiction under the federal RICO Act and under Minnesota's long-arm statute, Minnesota Statute § 543.19. Under the federal RICO Act, a court can exercise jurisdiction over a person in any district where the defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). Courts have interpreted § 1965(a) as allowing courts to exercise nationwide personal jurisdiction so long as it comports with due process. *See ESAB Grp., Inc. v.*

*Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997).  Likewise, Minnesota's long-arm statute "extend[s] the personal jurisdiction of Minnesota courts as far as the Due Process Clause of the federal constitution allows."  *Riley I*, 884 N.W.2d at 327 (alterations in the original).  Thus, the analysis for personal jurisdiction under both statutes collapses into whether constitutional due process allows the Court to exercise jurisdiction over Defendants.

### 2.  Constitutional Jurisdiction

The United States Supreme Court has explained that constitutional due process requires that a defendant have "certain minimum contacts" with the forum state such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).  A defendant's conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  "It is essential in each case that the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

When a federal statute dictates whether the court has personal jurisdiction, courts' due-process analysis is pursuant to the Fifth Amendment's Due Process Clause instead of the Fourteenth Amendment.  *ESAB*, 126 F.3d at 626 ("The due process constraint on service under [a federal statute] is not, however, grounded in the Fourteenth Amendment,

which circumscribes service under state process pursuant to [a state long-arm statute].") Under the Fifth-Amendment analysis, courts evaluate whether the defendant has sufficient contacts with the United States. *See id.* at 627; *see also In re Fed. Fountain, Inc.*, 165 F.3d 600, 601-02 (8th Cir. 1999) (en banc). The inquiry is still a per-claim, per-defendant inquiry. *ESAB*, 126 F.3d at 627. Here, Plaintiffs have brought a claim against Defendants under the RICO Act, which allows for nationwide personal jurisdiction. Thus, the question for the Court is whether Defendants have sufficient minimum contacts with the United States instead of any particular state. *See id.* at 626-27; *see also* Wright & Miller § 1068.1. Here, there is no question that Defendants—all U.S. companies—have minimum contacts with the United States. The Court can therefore properly exercise jurisdiction over Defendants for the RICO claim.[2]

Next, the Court turns to the remaining state-law claims. When a court has personal jurisdiction over a defendant for one claim, the court can usually exercise personal jurisdiction over the defendant for similar claims that arise out of the same common nucleus of operative facts. *See, e.g.*, *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004); *ESAB*, 126 F.3d at 628; *Aviva*

---

[2]     For due-process analysis under the Fifth Amendment, some courts have concluded that courts must determine whether the exercise of due process would be unconstitutionally burdensome even though the defendant has minimum contacts with the United States. *Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 947 n.23 (11th Cir. 1997) (noting the split). Here, even if the Court were to examine burden, the Court concludes that Defendants—again, all U.S. entities—are not unconstitutionally burdened by a United States court exercising jurisdiction over them. "[W]hen the defendant is located within the United States, he must look primarily to federal venue requirements for protection from onerous litigation." *See ESAB*, 126 F.3d at 627 (internal quotation marks omitted).

*Life & Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 703 n.7 (S.D. Iowa 2014) (collecting

cases). Here, Plaintiffs' state-law claims arise out of the same common nucleus of

operative facts: All of Plaintiffs' claims relate to Defendants' role in facilitating payday

loans. Indeed, Defendants averred as much when they removed the case to federal court.

(Doc. No. 1 ¶¶ 15-18 ("This Court has supplemental jurisdiction over the remaining state

law claims in this action, because such claims are closely related to and arise out of the

same set of operative facts as the federal law claim.").) Thus, the Court has pendent

personal jurisdiction over Defendants for the state-law claims as well.[3]

Defendants' arguments to the contrary are unpersuasive. Much of Defendants'

briefing focuses on the Minnesota long-arm statute, which does not affect the Court's

analysis under RICO and the Fifth Amendment. *ESAB*, 126 F.3d at 626-27 (finding

jurisdiction under RICO and the Fifth Amendment, even though it also concluded that the

district court did not have jurisdiction under South Carolina's long-arm statute). In

response to Plaintiffs' RICO argument, Defendants point to *Burkhart v. Medserv Corp.*,

---

[3]     Because the Court finds that it has personal jurisdiction based on the RICO claim
and pendent personal jurisdiction, the Court declines to address the parties' arguments
regarding whether the Court could exercise personal jurisdiction over Defendants under
Minnesota's long-arm statute and the Fourteenth Amendment. But if the Court were to
apply the traditional minimum-contacts analysis consistent with the 14th Amendment, the
Court would have concluded that it has specific personal jurisdiction over MoneyMutual
consistent with the Minnesota Supreme Court's decision in *Rilley I*, 884 N.W.2d 321
(Minn. 2016). Similarly, the Court would have concluded that it has specific personal
jurisdiction over PartnerWeekly which operated MoneyMutual. But the Court would also
have concluded that it likely did not have personal jurisdiction over Selling Source. The
Court, however, would have delayed dismissing Selling Source to allow Plaintiffs the
opportunity to conduct discovery into the operation of Defendants to determine whether
their corporate structure justified the Court exercising personal jurisdiction. *See* Wright
& Miller § 1069.4.

where the district court concluded that the Fifth Amendment still requires contacts with the forum state.  916 F. Supp. 919, 922 (W.D. Ark. 1996).  But in *In re Federal Fountain, Inc.*, the full Eighth Circuit rejected that argument and concluded that the inquiry under the Fifth Amendment is whether the defendant has minimum contacts with the United States.  165 F.3d at 601-02.

Additionally, Defendants argue that Plaintiffs' RICO claim cannot establish jurisdiction because it fails as a matter of law.  To exercise jurisdiction pursuant to the RICO Act, Plaintiffs must allege a colorable RICO claim.  *Republic of Pan. v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 941 (11th Cir. 1997).  A colorable claim is a lower pleading standard than required under Rule 12(b)(6):  "[T]the court should dismiss for lack of jurisdiction only if the right claimed is so 'insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise devoid of merit as not to involve a federal controversy.'"  *Id.* (internal quotation marks omitted) (quoting *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1055 (2d Cir. 1993)).  The moving party has the "high burden" of showing that the claim is not colorable.  *See Herrmann*, 9 F.3d at 1056-57.

Here, Defendants have failed to show that Plaintiffs' RICO claim is not colorable.  To start, Defendants seem to acknowledge that Plaintiffs' claim is colorable because they used that claim as a basis for the Court's jurisdiction in their removal papers.  (Doc. No. 1 at ¶ 14 ("The United States District Court for the District of Minnesota has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 because this action constitutes a claim by Plaintiffs for violation of a federal statute.  Plaintiffs specifically allege a claim under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C.

§ 1962).").)  But apart from that, Defendants have not shown how Plaintiffs' RICO claim is so implausible that the Court does not have subject matter jurisdiction over the claim, which would be necessary to preclude the Court from exercising personal jurisdiction pursuant to RICO.  *See Republic of Pan.*, 119 F.3d at 942 n.9; *see also Herrmann*, 9 F.3d at 1056-57.  Thus, the Court has personal jurisdiction over all three defendants for all of Plaintiffs' claims and therefore denies Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

## II.     Motion to Dismiss for Failure to State a Claim

Defendants also move pursuant to Rule 12(b)(6) to dismiss Plaintiffs' claims for: (1) violating Minnesota's payday-lending statutes, Minnesota Statute §§ 47.60 and 47.601; (2) violating § 1962(c) of the federal RICO Act; (3) violating Minnesota Consumer Fraud Act, Minnesota Statute § 325F.69 and Minnesota False Statement in Advertising Act, Minnesota Statute § 325F.67; (4) violating Minnesota Uniform Deceptive Trade Practices Act, Minnesota Statute § 325D.44; (5) unjust enrichment; (6) civil conspiracy and aiding and abetting; and (7) alter ego/piercing the corporate veil.

### A.     Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v.*

*City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

**B.    Minnesota Statutes §§ 47.60 & 47.601.**

Plaintiffs brought claims under Minnesota Statute §§ 47.60 and 47.601, which cover payday lending. Section 47.60 regulates consumer small loans and section 47.601 regulates consumer short-term loans. Defendants move to dismiss Plaintiffs' payday-lending claims arguing that: (1) Defendants are not covered by the statutes; (2) even if Defendants are covered, the Minnesota statutes are void for vagueness; and (3) the Minnesota payday statutes violate the First Amendment as applied to Defendants.

Minnesota Statute § 47.60 regulates consumer small loan lenders, defined as a financial institution or business entity "engaged in the business of making consumer

small loans." *Id.* Defendants argue that they do not make consumer loans, and Plaintiffs did not respond to Defendants' argument. Thus, the Court concludes that Plaintiffs abandoned their claims under § 47.60. *Gharwal v. Fed. Nat. Mortg. Ass'n*, Civ. No. 13-0685, 2013 WL 4838904, at *1 n.2 (D. Minn. Sept. 11, 2013) (dismissing a claim when plaintiff failed to respond to the argument), *aff'd*, 570 F. App'x 624 (8th Cir. 2014). But even if the Court were to consider Defendants' argument, the Court finds that Plaintiffs have failed to plausibly allege that Defendants were in the businesses of making consumer small loans. Plaintiffs' claim under § 47.60 would need to be brought against the actual lender. Thus, the Court dismisses Plaintiffs' payday-lending claims to the extent that they are brought under § 47.60.

Minnesota Statute § 47.601 regulates "individual or entity engaged in the business of making or arranging consumer short-term loans, other than a state or federally chartered bank, savings bank, or credit union." Plaintiffs argue that Defendants arranged consumer short-term loans and therefore are covered by the statute. "Arrange" is not defined in the statute. In *State ex rel. Swanson v. Cashcall*, the Minnesota Court of Appeals concluded that § 47.601 applied to an entity that serviced the loans.[4] 2014 WL 4056028, at *7 (Minn. Ct. App. Aug. 18, 2014). While the case is unpublished, the Court

---

[4]    In *Cashcall*, the court also noted that the bank and subsidiary allegedly controlled the loan originator. *Id.* at *1. The state contended that such control made the bank and the subsidiary de facto lenders. *Id.* at *6-7. In analyzing § 47.601, however, the court of appeals focused on the bank's and the subsidiary's roles in servicing the loans after they were made. In that capacity, the court of appeals affirmed the finding that the bank and the subsidiary at the very least arranged the loans. *Id.* at *7. Thus, based on *Cashcall*, the Court concludes that Defendants did not have to control the lenders to be covered by § 47.601.

finds it persuasive for the proposition that § 47.601 is not limited to the loan issuers. "Arrange" is defined, among other things, as "to bring about an agreement." *Arrange*, Merriam-Webster, https://www.merriam-webster.com/dictionary/arrange (last visited Aug. 28, 2017); *see also Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016) ("To determine the plain meaning of a word, we often consider dictionary definitions."). Here, Defendants' business is connecting lenders and borrowers. Defendants therefore help bring about an agreement. Thus, the Court concludes that, as alleged in the Amended Complaint, Defendants are covered by Minnesota Statute § 47.601 because they arrange consumer short-term loans.

Next, Defendants argue that even if the plain language of the statute covers their business, the Court should still dismiss the claim because the statute is unconstitutionally vague and the statute violates Defendants' First-Amendment right as applied. Both arguments fail. First, Minnesota Statute § 47.601 is not unconstitutionally vague. "[A] statute must be defined clearly enough that a person of ordinary intelligence has a reasonable opportunity to know what is prohibited." *Fogie v. THORN Americas, Inc.*, 95 F.3d 645, 650 (8th Cir. 1996). Additionally, "the statute must provide standards that are clear enough that those charged with applying the statute are not required to make basic policy decisions on a subjective or arbitrary basis." *Id.* Courts analyze criminal statutes under a stricter test than economic statutes. *Id.* Section 47.601 is an economic statute and therefore a more tolerant test applies—the statute must be impermissibly vague in all of its applications. *See id.* (citing *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982)).

Here, Minnesota Statute § 47.601 is not impermissibly vague in all of its application. Indeed, the statute plainly covers the Defendants' business: Defendants put consumer-borrowers into contact with lenders of short-term loans. In other words, Defendants arranged consumer short-term loans. Defendants did not even address Plaintiffs' arguments in their reply. Thus, the Court finds that Minnesota Statute § 47.601 is not unconstitutionally vague.

Second, Minnesota Statute § 47.601, as applied, does not violate Defendants' freedom of speech. As relevant here, § 47.601: (1) prohibits certain contractual provisions—such as class-action waivers—from being in short-term loan contracts; (2) requires that the short-term loan contract include certain terms, such as the name of the lender and the APR; (3) requires the lender to make certain disclosures about the loans to the Minnesota Commissioner of Commerce; and (4) prohibits deceptive debt-collection practices as outlined in Minnesota Statute § 332.37. Minn. Stat. § 47.601 subds. 2-4. Defendants' motion focuses on only the disclosure requirement. (Defs.' Memo. at 36-37.) Section 47.601, subdivision 4, requires lenders to disclose the amount of loans issued, the average APR, how many borrowers are repeat customers, and how many loans have been written off as bad debt. *Id.* § 47.601 subd. 4.

When, as here, the restriction on commercial speech is a content- or speaker-based restriction, the Eighth Circuit has distinguished between bans and compelled disclosures. *See 1-800-411-Pain Referral Serv., LLC v. Otto*, 744 F.3d 1045, 1055, 1060 (8th Cir. 2014). A state can compel purely factual commercial speech so long as the compelled

speech is rationally related to a substantial government interest.[5]  *CTIA-The Wireless*

*Ass'n v. City of Berkeley, Cal.*, 854 F.3d 1105, 1117 (9th Cir. 2017); *see also*

*1-800-411-Pain Referral Serv., LLC.*, 744 F.3d at 1060.  Defendants argue that

Minnesota does not have a substantial interest in requiring lead generators to make purely

factual disclosures to the Minnesota Commissioner of Commerce.  In *Riley I*, the

Minnesota Supreme Court concluded that "Minnesota has a strong interest in protecting

its residents from predatory lending, enforcing consumer protection laws, and providing a

forum for litigating violations of its payday-lending statutes."  *Riley I*, 884 N.W.2d at

338.  The interests identified by the Minnesota' Supreme Court are substantial.  *See*

*CTIA-The Wireless Ass'n*, 854 F.3d at 1117 ("[T]he interest must be more than the

satisfaction of mere 'consumer curiosity.'").  The Court finds that § 47.601 furthers those

interests by, among other things, requiring every individual who arranges or makes

payday loans to disclose information about those payday loans.  The Court therefore finds

§ 47.601 does not violate the First Amendment as applied to lead generators.  Thus, the

Court denies Defendants' motion to dismiss to the extent that it seeks a dismissal of

claims brought under § 47.601.

---

[5]      In *CTIA-The Wireless Ass'n*, the Ninth Circuit noted that some circuits had
waffled on whether commercial speech could be compelled for less than a substantial
government interest.  *See* 854 F.3d at 1117.  The Court is not convinced that commercial
speech can be compelled only in situations involving substantial government interests.
But here Minnesota has a substantial interest in regulating payday lenders, thus the Court
need not resolve the issue.

## C.     RICO

Defendants also move to dismiss Plaintiffs' RICO claim.  "To plead a viable RICO claim for damages, a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  *Sebrite Agency, Inc. v. Platt*, 884 F. Supp. 2d 912, 918 (D. Minn. 2012) (quoting *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir.1999)).  The elements of a RICO claim must be pleaded with particularity.  *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).  "'Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'"  *Moss v. BMO Harris Bank, N.A.*, Civ. No. 13-5438, 2017 WL 2894887, at *5 (E.D.N.Y. July 7, 2017) (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (alterations in the original)).  Here, Defendants argue that Plaintiffs have failed to adequately plead a RICO enterprise or to plead their RICO claim with particularity.[6]

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  Plaintiffs allege that Defendants along with various payday lenders formed an association in fact to facilitate illegal payday lending.  "[A]n association-in-fact enterprise must have at least three structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to

---

[6]     Because the Court finds that Plaintiffs have failed to adequately plead an enterprise existed, the Court does not address Defendants' other argument.

permit these associates to pursue the enterprise's purpose." *Crest Const. II, Inc.*, 660 F.3d at 354 (alteration in the original) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).

Plaintiffs contend that a network of lenders used Defendants to connect with potential borrowers of payday loans. In essence, Plaintiffs' RICO claim is that Defendants provided the access to Minnesota by which the network of lenders could make illegal loans. Courts are necessarily suspicious of RICO claims based on access. Indeed, "'inside traders all use the stock market to further their unlawful goals, but that alone does not plausibly lead to the conclusion that they are all working together as part of a single enterprise in furtherance of a *larger fraudulent scheme*.'" *Moss*, 2017 WL 2894887, at *8 (quoting *Anctil v. Ally Fin., Inc.*, 998 F. Supp. 2d 127, 141-42 (S.D.N.Y. 2014)). To adequately plead an enterprise, the plaintiff must show that all persons joined the enterprise for a common racketeering purpose. *See Nelson v. Nelson*, 833 F.3d 965, 968 (8th Cir. 2016). The claim will not survive a motion to dismiss merely by showing parallel conduct. *See id.*; *see also Target Corp. v. LCH Pavement Consultants, LLC*, Civ. No. 12-1912, 2013 WL 2470148, at *4 (D. Minn. June 7, 2013) ("[A]n association-in-fact enterprise requires more than parallel conduct; it requires relationships among those associated with the enterprise, and it requires those associated with the enterprise to function as a unit, that they be put together to form a whole." (internal quotation marks omitted)).

Here, Plaintiffs' claim fails because they have failed to adequately plead a common purpose among the various lenders. It is not enough that Plaintiffs allege that

Defendants' purpose was to facilitate illegal loans and that the various lenders also wanted to sell illegal loans. A so-called rimless conspiracy does not establish a RICO enterprise. *See LCH Pavement*, 2013 WL 2470148, at *4 ("This is because without a 'rim,' there are no allegations of concerted actions among the spokes, only allegations of parallel conduct."). Plaintiffs allege that the lenders were aware of and benefited from each other's participation because Defendants could not advertise the operation without the network of lenders. (Am. Compl. ¶ 130.) But why did *all* of the lenders join together? Plaintiffs argue that the lenders benefit from the inclusion of other lenders, but Plaintiffs fail to explain why supposedly racketeering lenders would join a network where they openly compete with one another over the same borrowers. (*See* Am. Compl. ¶ 67 (noting that borrowers could apply for loans from multiple lenders).) Without particular allegations regarding the lenders' concerted effort, Plaintiffs' RICO claim fails. Thus, the Court grants Defendants' motion to the extent it seeks dismissal of Plaintiffs' RICO claim.[7]

---

[7]     The Court must also address the seeming incongruity between finding a colorable RICO claim sufficient to exercise personal jurisdiction and its finding that the RICO claim fails as a matter of law. A colorable claim is the same standard used to determine whether the Court has subject matter jurisdiction. *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1055 (2d Cir. 1993). Applying that standard, a claim is not colorable only if it is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* Here, as the Court has already explained, Plaintiffs' RICO claim was colorable but ultimately failed to state a claim. *See Republic of Pan.*, 119 F.3d at 942 n.9 & 951 (dismissing the plaintiff's RICO claim even though the court noted in dicta that, if the defendants had not waived the issue, then the court would have concluded that the plaintiff stated a colorable RICO claim for the court to exercise personal jurisdiction).

**D. MCFA and FSAA**

Defendants also move to dismiss Plaintiffs' claims for violating the Minnesota Consumer Fraud Act ("MCFA") and the Minnesota False Statement in Advertising Act ("FSAA"). The MCFA prohibits: "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn. Stat. § 325F.69, subd. 1. "Merchandise" includes loans. *Id.* § 325F.68, subd. 2. Similarly, the FSAA prohibits advertisements that contain "any material assertion, representation, or statement of fact which is untrue, deceptive, or misleading." Minn. Stat. § 325F.67.

Defendants argue that the Court should dismiss: (2) the FSAA and MCFA claims because Plaintiffs failed to allege false statements; (2) the MCFA claim because Plaintiffs failed to plead fraud with particularity; and (3) the MCFA claim because Plaintiffs failed to plead a causal nexus between the misstatements and the Plaintiffs' injuries.

1. False statement

Plaintiffs identified four allegedly false statements from MoneyMutual's website:

1. "MoneyMutual carefully chooses its network of lenders and requires each of them to follow a strict code of conduct, including abiding by all applicable state and federal laws."

2. "[U]sing an APR to represent the fees is not only inaccurate, but also fairly misleading."

3. "[MoneyMutual] helps provide people who have no other short-term cash alternatives, access to lenders who offer payday loans and cash advances."

4. "[G]etting a short term cash loan from MoneyMutual's network of participating lenders can help provide the immediate assistance to avoid expensive fees."

(Am. Compl. ¶¶ 141(a)-(d) & 150(a)-(d)).[8] Defendants contend that the statements are not actionable because they are either puffery, opinion, or true. "'Puffery exists in two general forms: (1) exaggerated statements of bluster or boast upon which no reasonable consumer would rely; and (2) vague or highly subjective claims of product superiority, including bald assertions of superiority.'" *Laughlin v. Target Corp.*, Civ. No. 12-489, 2012 WL 3065551, at *2 (D. Minn. July 27, 2012) (quoting *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 390-91 (8th Cir. 2004)). For product claims "[t]o be actionable, the statement must be a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Cf. Am. Italian Pasta Co.*, 371 F.3d at 391 (internal quotation marks omitted); *see also Laughlin*, 2012 WL 3065551, at *2 (citing *American Italian Pasta Co.* for MCFA claims).

First, the statement that Defendants "carefully" choose their lenders is actionable. Plaintiffs contend that Defendants employed no process to select their lenders. Such a claim can be reasonably interpreted as a statement of objective fact. Thus, Defendants' statement that they carefully choose lenders is actionable under the MCFA.

Second, the statement that Defendants require their lenders to abide by all applicable state and federal laws is actionable because it represents an objective fact

---

[8]    Plaintiffs also allege that Defendants violated the MCFA by engaging in conduct barred by Minnesota's payday-lending statutes, Minnesota Statute §§ 47.60 and 47.601. Defendants, however, have not moved to dismiss this part of Plaintiffs' claim. Even if the Court were to consider the issue, the Court would not dismiss that part of the claim.

capable of being proven true or false. Defendants argue that the statement is true because their agreements with the lenders apparently contain a warranty that the lenders will comply with state and federal law. But given that Defendants have provided only a "representative" lender agreement, instead of all relevant lender agreements, the Court declines to resolve this issue on a motion to dismiss. (*See* Doc. No. 29 ¶ 6, Ex. A.) Thus, Defendants' statement that it requires lenders to comply with the law is actionable.

Third, the statement that using annual percentage rates to represent fees is inaccurate and misleading is actionable. Defendants' statement is capable of being proven true or false—whether the APR fairly shows the true costs of the payday loan as compared to other financial products. Thus, the statement is actionable.

Fourth, the statement that MoneyMutual offers short-term loans to people with no other alternatives is not actionable. Defendants' statement is puffery because it is an exaggerated claim on which no borrower would rely. Indeed, a borrower would know whether he had other options. Thus, Defendants' statement that their borrowers have no other options is not actionable.

Fifth, the statement that getting a payday loan "can help provide the immediate assistance to avoid expensive fees" is not actionable. Defendants' statement is mere puffery because it is an exaggerated claim on which no borrower would rely. Plaintiffs do not allege that the financial consequences of the payday loans are not disclosed. And, again, a borrower will likely know whether the payday loan will help him avoid other expensive fees. Thus, the statement that payday loans will help avoid expensive fees is not actionable. The Court therefore grants in part Defendants' motion to dismiss the

MCFA and FSAA claims to the extent that Plaintiffs have failed to identify actionable misstatements.

### 2. Fraud

Defendants also argue that Plaintiffs' MCFA claim fails because the claim was not pleaded with particularity. Claims under the MCFA must be pleaded with particularity under Rule 9(b). *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 944 (D. Minn. 2009). To satisfy Rule 9(b), "the complaint must plead the 'who, what, where, when, and how' of the alleged fraud." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (citation omitted). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citation omitted). Here, Plaintiffs have adequately alleged their MCFA claim: Plaintiffs alleged that Defendants made misleading statements in television ads and on their website and engaged in deceptive conduct by facilitating illegal loans. Thus, the Court denies Defendants' motion to the extent that it seeks to dismiss Plaintiffs' MCFA claim for lack of particularity.

### 3. Causal Nexus

Defendants also move to dismiss on the basis that Plaintiffs failed to allege a causal nexus between the deceptive conduct and the injury. But for the plaintiffs to state a claim under the MCFA, they "need only plead that the defendant engaged in conduct prohibited by the statutes and that the plaintiff was damaged thereby." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) (quoting *Grp. Health Plan, Inc. v.*

*Philip Morris Inc.*, 621 N.W.2d 2, 12 (Minn. 2001)); *accord Kinetic Co.*, 672 F. Supp. 2d

at 946. Thus, Plaintiffs do not need to plead causal nexus, even though they will

eventually have to prove it. *Kinetic Co.*, 672 F. Supp. 2d at 946. Here, Plaintiffs have

adequately pleaded that Defendants violated the MCFA and that Plaintiffs were injured

thereby (in the form of illegal loans). The Court therefore denies Defendants' motion to

dismiss to the extent it seeks to dismiss Plaintiffs' MCFA claim for failing to plead a

causal nexus.

### E.     MUDTPA

Defendants move to dismiss Plaintiffs' claim under the Minnesota Uniform

Deceptive Trade Practices Act ("MUDTPA"). Under the MUDTPA, "a person likely to

be damaged by a deceptive trade practice of another may be granted an injunction against

it under the principles of equity and on terms that the court considers reasonable." Minn.

Stat. Ann. § 325D.45. "Proof of monetary damage, loss of profits, or intent to deceive is

not required." *Id.* Like the MCFA, a claim under the MUDTPA must be pleaded with

particularity. *Podpeskar v. Makita U.S.A. Inc.*, Civ. No. 15-3914, 2017 WL 1169533, at

*6 (D. Minn. Mar. 28, 2017). Plaintiffs bring a claim for the same conduct as alleged for

their MCFA claim.[9] Defendants argue that Plaintiffs' claim fails because: (1) they fail to

allege any false statement; (2) an injunction is not available; and (3) Plaintiffs have failed

to plead an injury to their commercial interests.

---

[9]     Again, Plaintiffs have alleged Defendants violated the MUDTPA by engaging in
conduct barred by Minnesota's payday-lending statutes, Minnesota Statute §§ 47.60 and
47.601. Defendants, however, have not moved to dismiss this part of Plaintiffs' claim.
Even if the Court were to consider the issue, the Court would not dismiss that part of the
claim.

First, the Court concludes, consistent with its findings for the MCFA and FSAA claims, that Plaintiffs' MUDTPA claim fails to the extent that it is based on nonactionable statements. Specifically, Defendants' statements that MoneyMutual offers short-term loans to people with no other alternatives and that getting a payday loan "can help provide the immediate assistance to avoid expensive fees" are not actionable. Thus, the Court dismisses Plaintiffs' MUDTPA claim to the extent they are based on nonactionable statements.

Second, Defendants argue that the Court should dismiss the MUDTPA claim because no remedy is available. An injured party can obtain only an injunction under the MUDTPA. Defendants argue that some of the misstatements are no longer on their website, and therefore Plaintiffs' claim is moot. Defendants, however, have provided no evidence to support this statement or evidence that anything prevents the Defendants from reintroducing the statements onto the website. *See Minn. Chamber of Commerce v. Gaertner*, 710 F. Supp. 2d 868, 872-73 (D. Minn. 2010) ("[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." (quoting *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 170 (2000))). Thus, the Court concludes that Defendants have failed to show the claim is moot.

Last, Defendants argue Plaintiffs' MUDTPA claim fails because Plaintiffs have failed to show an injury to their commercial interests. Defendants argue that the MUDTPA is coextensive with the federal Lanham Act and uses the same analysis. But the Eighth Circuit has rejected that conclusion: "The [district court's] second error was

in equating the standards for relief under the Lanham Act and the Minnesota consumer protection statutes at issue." *Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011). A consumer can proceed with a MUDTPA claim so long as he alleges a threat of future injury from the deceptive practices. *See id.* at 1185. Thus, the Court concludes that Plaintiffs do not need to allege harm to a commercial interest. The Court therefore grants Defendants' motion to dismiss in part. The Court dismisses the Plaintiffs' MUDTPA claim to the extent it is based on nonactionable statements.

### F. Unjust enrichment

Defendants argue that the Court should dismiss Plaintiffs' claim for unjust enrichment. "In order to establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001). Defendants argue that Plaintiffs' claim should be dismissed because: (1) the payments that Defendants received from lenders for leads are not subject to recovery by Plaintiffs; (2) Plaintiffs had an express contract that governs the conduct in question; and (3) Plaintiffs have an adequate remedy at law. Plaintiffs' claim, however, is pleaded in the alternative to its statutory claims. And at this stage of the litigation, Plaintiffs are allowed to proceed with alternative theories of law and equity. *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012). Thus, the Court denies the Defendants' motion to the extent that it seeks to dismiss Plaintiffs' claim for unjust enrichment.

### G.    Civil Conspiracy and Aiding and Abetting

Defendants also move to dismiss Plaintiffs' claims for civil conspiracy and for aiding and abetting.  "To establish civil conspiracy, a claimant must show that two or more people worked together to accomplish (1) an unlawful purpose or (2) a lawful act by unlawful means."  *Robert Allen Taylor Co. v. United Credit Recovery, LLC*, Civ. No. A15-1902, 2016 WL 5640670, at *11 (Minn. Ct. App. Oct. 3, 2016) (citing *Harding v. Ohio Cas. Ins. Co.*, 41 N.W.2d 818, 824 (Minn. 1950)).  Civil conspiracy is not an independent claim and is instead a theory of liability premised on an underlying tortious act.  *Leiendecker v. Asian Women United of Minn.*, 848 N.W.2d 224, 228 n.2 (Minn. 2014).  Likewise, aiding and abetting requires:  "(1) the primary tortfeasor must commit a tort that causes an injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach."  *Zayed v. Associated Bank, N.A.*, 779 F.3d 727, 733 (8th Cir. 2015).

Here, Defendants argue that Plaintiffs have failed to allege a factual basis for civil conspiracy or aiding and abetting.  The Court, however, concludes that Plaintiffs have adequately alleged the claims:  Plaintiffs allege that Defendants entered into agreements with various lenders to provide them access to Minnesota to make illegal payday loans. Further, Plaintiffs contend that the various lenders could not circumvent Minnesota law without Defendants' help.  (*See* Am. Compl. ¶ 28 ("For example, Defendants brokered a payday loan with one of the plaintiffs in this action and Bottom Dollar Payday after it had been ordered to cease and desist from lending to Minnesotans by the Minnesota

Department of Commerce.").) Such allegations are sufficient to survive a motion to dismiss. Thus, the Court denies Defendants' motion to the extent it seeks to dismiss Plaintiffs' claims for civil conspiracy and aiding and abetting.

### H. Alter ego/piercing

Defendants also move to dismiss Plaintiffs' claim for piercing the corporate veil or alter ego. Defendants cite to a summary judgment order from Missouri to argue that such a claim is not an independent claim for relief. While it is true that piercing the corporate veil and alter ego are liability theories which require an underlying tort claim or statutory claim, courts in Minnesota have allowed them to be pleaded as independent claims. *See Bank of Montreal v. Avalon Capital Grp., Inc.*, 743 F. Supp. 2d 1021, 1030 (D. Minn. 2010) (allowing a separately pleaded claim for alter ego to proceed past a motion to dismiss). Defendants' motion therefore fails.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Amended Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim (Doc. No. [11]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1.     Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

2.     Defendants Motion to Dismiss for Failure to State a Claim is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.     Plaintiffs' claim under Minnesota Statute § 47.60 is **DISMISSED WITH PREJUDICE**.

b.     Plaintiffs' RICO claim is **DISMISSED WITH PREJUDICE**.

c.     Plaintiffs' claims under the Minnesota Consumer Fraud Act, the Minnesota False Statement in Advertising Act, and the Minnesota Uniformed Deceptive Practices Act are **DISMISSED WITH PREJUDICE** to the extent that they rely on the nonactionable statements that MoneyMutual offers short-term loans to people with no other alternatives and that getting a payday loan "can help provide the immediate assistance to avoid expensive fees."

d.     The remainder of Defendants' Motion to Dismiss for Failure to State a Claim is **DENIED**.

Dated:  August 30, 2017                    s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge