# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Scott Rilley, Michelle Kunza, Venus Colquitt-Montgomery, Jonathan Aldrich, and Kendra Buettner, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MoneyMutual, LLC, Selling Source, LLC, and PartnerWeekly, LLC,<br><br>Defendants. | Civil No. 16-4001 (DWF/LIB)<br><br><br><br>**MEMORANDUM OPINION AND ORDER** |

E. Michelle Drake, Esq., Jeffrey Laurence Osterwise, Esq., and John G. Albanese, Esq., Berger & Montague, PC; and Mark L. Heaney, Esq., Heaney Law Firm, LLC, counsel for Plaintiffs.

Christina Rieck Loukas, Esq., and Joseph M. Windler, Esq., Winthrop & Weinstine, PA; and Donald J. Putterman, Esq., and Michelle L. Landry, Esq., Putterman Landry & Yu LLP, counsel for Defendants.

## INTRODUCTION

This matter is before the Court on the Defendants' motion to dismiss for lack of personal jurisdiction. Plaintiff opposes Defendants' motion to dismiss. For the reasons discussed below, the Court denies Defendants' motion.

## BACKGROUND

The Court has previously described, in detail, the background facts of this case in its August 30, 2017 Memorandum Opinion and Order. (Doc. No. 62.) The Court will

only briefly summarize the relevant facts here. In short, Defendants collectively are entities that operate a lead-generating business for various payday lenders. Consumers would go to Defendants' website to fill out an application, and then Defendants would sell the application to lenders. The lenders would independently decide whether to lend consumers money.

Plaintiffs are consumer-borrowers who have filed a purported class action against Defendants related to the payday loans. Plaintiffs first filed their complaint in Minnesota state court, naming only MoneyMutual as a defendant. MoneyMutual moved to dismiss for lack of personal jurisdiction. In *Rilley v. MoneyMutual, LLC* ("*Rilley I*"), the Minnesota Supreme Court affirmed the Dakota County District Court's and Minnesota Court of Appeals' findings of personal jurisdiction. 884 N.W.2d 321 (Minn. 2016). After the United States Supreme Court denied MoneyMutual's petition for certiorari, 137 S. Ct. 1331, Plaintiffs amended the complaint to add Defendants PartnerWeekly and Selling Source. (Doc No. 1-2 ("Am. Compl.").)

Plaintiffs then filed their First Amended Complaint, bringing claims for: (1) violating Minnesota's payday-lending statutes, Minnesota Statute §§ 47.60 and 47.601; (2) violating § 1962(c) of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"); (3) violating the Minnesota Consumer Fraud Act, Minnesota Statute § 325F.69, and the Minnesota False Statement in Advertising Act, Minnesota Statute § 325F.67; (4) violating the Minnesota Uniform Deceptive Trade Practices Act, Minnesota Statute § 325D.44; (5) unjust enrichment; (6) civil conspiracy and aiding and abetting; and (7) alter ego/piercing the corporate veil. Defendants then

2

removed the case to this Court and again moved to dismiss for lack of personal jurisdiction. In the August 30, 2017 Order, the Court denied the motion, but dismissed the RICO claim under Fed. R. Civ. P. 12(b)(6).

Since the August 30, 2017 Order, discovery has also revealed facts clarifying the nature of Selling Source's relationship with MoneyMutual and PartnerWeekly, as well as its role in the payday-lending scheme. Selling Source is the sole owner of MoneyMutual and PartnerWeekly. PartnerWeekly and Selling Source have shared numerous employees, including: (1) Glenn McKay, who was simultaneously President of PartnerWeekly and CEO of Selling Source; and (2) a Chief Technology Officer. (Doc. No. 103 ("Albanese Decl.") ¶ 12, Exs. 6-7.) Finally, counsel for Selling Source provides input for and approves the content of e-mails sent to consumers, and Selling Source employees are responsible for sending out the e-mails. (Albanese Decl. ¶ 12, Ex. 4 ("Maple Dep.") at 17-18; Ex. 5 ("Madsen Dep.") at 13-14.)

On March 21, 2018, Plaintiffs filed their Second Amended Complaint, which added Plaintiffs Jonathon Aldrich, Venus Colquitt-Montgomery, and Kendra Buettner, omitted the previously dismissed claims, and did not add any new claims or theories of recovery. (Doc. No. 85 ("2d Am. Compl.").) Defendants now move to dismiss the Second Amended Complaint in its entirety.

## DISCUSSION

### I. Legal Standard

Defendants seek to dismiss Plaintiffs' claims for lack of personal jurisdiction. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a

prima facie showing that personal jurisdiction exists; that is, a plaintiff must allege facts to support a reasonable inference that defendant may be subjected to jurisdiction in the chosen forum. *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). If, as is the case here, the defendant denies jurisdiction, the plaintiff bears the burden of proving facts supporting personal jurisdiction. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 518 (8th Cir. 2010) (quotation omitted). Once a defendant offers affidavits to challenge personal jurisdiction, "facts, not mere allegations, must be the touchstone" in determining whether personal jurisdiction exists. *Dever*, 380 F.3d at 1072 (citation omitted); *see also Abbasi v. Leading Edge Aviation Servs., Inc.*, Civ. No. 16-295, 2016 WL 4007571, at *3 (D. Minn. July 26, 2016).

## II.     Pendent Jurisdiction

In the August 30, 2017 Order, the Court concluded that it has pendent personal jurisdiction over Defendants for Plaintiffs Rilley's and Kunza's state-law claims because Rilley and Kunza presented a colorable RICO claim that allows for nationwide service of process. (Doc. No. 62 at 7.) The Court subsequently dismissed the RICO claim pursuant to Fed. R. Civ. P. 12(b)(6) and the Second Amended Complaint does not assert a RICO claim. (Doc. No. 98 at 18.) The first issue therefore is whether there is a basis to exercise pendent personal jurisdiction over Plaintiffs' state-law claims.

When a court has personal jurisdiction over a defendant for one claim, the court can usually exercise personal jurisdiction over the defendant for similar claims that arise out of the same common nucleus of operative facts. *See, e.g.*, *Action Embroidery Corp.*

*v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1181 (9th Cir. 2004); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 628 (4th Cir. 1997); *Aviva Life & Annuity Co. v. Davis*, 20 F. Supp. 3d 694, 703 n.7 (S.D. Iowa 2014) (collecting cases). In the Court's August 30, 2017 Order, the Court concluded that it had jurisdiction over Plaintiffs' state law claims on the basis of pendent personal jurisdiction that arose from RICO's nationwide service of process. (Doc. No. 62 at 6-9.) But the Court then proceeded to dismiss Plaintiffs' RICO claim. (*Id.* at 16-17.)

Defendants now argue that the Court does not have pendent jurisdiction over Plaintiffs claims because they have not asserted a RICO claim and the exercise of pendent jurisdiction on the basis of Plaintiffs Rilley's and Kunza's claims is inappropriate. (Doc. No. 98 at 18.) The Court agrees. The Eighth Circuit has not specifically adopted pendent personal jurisdiction, and courts in other jurisdictions have held that the basis for retaining jurisdiction is weak when pendent jurisdiction is based on another party's claims that the court has already dismissed. *See Spratley v. FCA US LLC*, Civ. No. 17-0062, 2017 WL 4023348, at *7-8 (N.D.N.Y. Sept. 12, 2017) (collecting cases and holding that "specific jurisdiction over at least one Plaintiff's New York state law claims" does not allow the court to exercise pendent personal jurisdiction "over the out-of-state Plaintiffs' claims"). Here, the Second Amended Complaint is the operative complaint, and it contains no claims that grant nationwide service of process. Consequently, and in the absence of Eighth Circuit caselaw adopting the doctrine of pendent personal jurisdiction, the Court declines to exercise pendent jurisdiction over Plaintiffs' claims.

### III. Specific Jurisdiction

Personal jurisdiction is a two-step analysis: the Court must have statutory and constitutional authority for exercising jurisdiction over the defendant. Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, 4A *Fed. Prac. & Proc.* § 1069 (4th ed. 2017) ("Wright & Miller").

#### A. Statutory Jurisdiction

Federal Rule of Civil Procedure 4(k) provides that a court can exercise jurisdiction over a defendant if: (1) jurisdiction is allowed under the state long-arm statute; (2) the party is served within 100 miles of the courthouse; or (3) service is allowed under a federal statute. Plaintiffs argue that the Court has statutory jurisdiction under the federal RICO Act and under Minnesota's long-arm statute, Minnesota Statute § 543.19. Plaintiffs must show that jurisdiction is allowed under Minnesota's long-arm statute because the Court has concluded that the RICO Act does not provide a basis for exercising jurisdiction over Defendants for Plaintiffs' claims in the Second Amended Complaint. Minnesota's long-arm statute "extend[s] the personal jurisdiction of Minnesota courts as far as the Due Process Clause of the federal constitution allows." *Rilley I*, 884 N.W.2d at 327 (alterations in the original). Thus, the statutory and constitutional analyses are coextensive.

#### B. Constitutional Jurisdiction

"Because Minnesota's long-arm statute extends jurisdiction to the maximum limit consistent with due process, we need only evaluate whether . . . the requirements of due process [are] satisfied." *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d

1427, 1431 (8th Cir. 1995). "Due process allows a court to exercise personal jurisdiction over a non-resident defendant when the defendant has 'certain minimum contacts' with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 1431-32 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Where the forum state seeks specific personal jurisdiction over a non-resident defendant, due process is satisfied if the defendant has purposely directed his activities at residence of the forum . . . and the litigation results from alleged injuries that arise out of or related to those activities." *Id.* at 1432 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). A non-resident defendant must "purposefully avail itself" of the privileges, benefits, and protection of the forum state, such that the defendant "should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474-75.

Courts analyze five factors to evaluate whether jurisdiction is valid: (1) the nature and quality of the defendant's contact with the forum state; (2) quantity of the contacts; (3) source and connection of the cause of action with those contacts; and to a lesser degree (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. "The first three factors determine whether minimum contacts exist and the last two factors determine whether jurisdiction is reasonable according to traditional notions of fair play and substantial justice." *See Rilley I*, 884 N.W.2d at 338.

### 1. Nature and Quality of Contacts

As to the first factor, Plaintiffs have sufficiently pleaded facts showing an adequate type and quality of Defendants' contacts with the state of Minnesota. The Eighth Circuit has previously held that if a defendant's contacts are intended to induce commercial activity in the forum state, they are more likely to be found to fall under personal jurisdiction of that forum state. *Finley v. River North Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998) (finding that personal jurisdiction was proper for a record company who fraudulently misrepresented that certain bands would play in a concert in the forum state). In *Finley*, the court found jurisdiction to be proper because the defendants' conduct constituted "fraudulent misrepresentation, intended to induce commercial activity within the forum state." *Id.* E-mail contacts may establish personal jurisdiction when the sender knew or should have known that the recipient was located within a certain forum. *See Rilley I*, 884 N.W.2d at 331 n.11 (collecting cases).

Here, Defendants argue that their contacts with Minnesota are not of the type that is relevant to the Court's minimum-contacts analysis. (Doc. No. 146.) The Court disagrees. Plaintiffs have shown that Defendants sent e-mails to loan applicants matching them with lenders only after the applicants had already completed an online application in which the applicants indicated that they were Minnesota residents. Defendants also sent e-mails to Minnesota borrowers encouraging them to seek additional loans. Defendants' website, www.moneymutual.com, was also advertised directly to Minnesotans and engaged Minnesota consumers in transactions by which consumers provided their information in exchange for Defendants connecting them with

8

lenders.  In these situations, it should have been clear to Defendants that they were soliciting Minnesota residents and that the residents were likely to open those e-mails and utilize Defendants' website in Minnesota.  *See Rilley I*, 884 N.W.2d at 332.

Defendants argue that the e-mails are irrelevant to the establishment of minimum contacts.  Defendants rely heavily on *Walden v. Fiore*, 571 U.S. 277 (2014), to argue that their interactions with Minnesotans are not enough to establish minimum contacts because they were not done in the forum state.  In *Walden*, the Supreme Court held that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State."  *Id.* at 286. The Supreme Court further explained that "a defendant's contacts with the forum state may be intertwined with his transactions or interactions with the plaintiff."  *Id.*  Here, Defendants' commercial contacts with thousands of loan applicants in Minnesota are not "random, fortuitous and attenuated" but rather "intertwined" with Defendants' plan to connect known Minnesotans to lenders based on personal information Defendants collected from those consumers.  Defendants argue that Plaintiffs cannot show injuries from Defendants' conduct because Plaintiffs were not subject to any direct mail or television advertisements.  Though this may be the case, Plaintiffs nonetheless received e-mails sent by Defendants that urged Plaintiffs to sign up for loans.  Defendants' solicitation of the payday-loan applications via e-mail was the culmination, and constitutes a "purposeful direction," of conduct that is related to the Plaintiffs' claims.

9

Furthermore, Defendants had the option to screen out Minnesota customers from receiving its services, but instead chose to solicit their information. (*See* Albanese Decl. ¶ 12, Ex. I (Defendants' website providing that "[t]his service is not available in New York or to New York borrowers due to interest rate limits under New York law").) That choice is indicative of purposefully directed contacts at Minnesota as a forum. *See Illinois v. Hemi Group, LLC*, 622 F.3d 754, 757-58 (7th Cir. 2010) (finding that an online cigarette seller's decision to ship to 49 states other than New York showed that the defendant "knew that conducting business with residents of a particular state could subject it to jurisdiction there and also that it knew how to protect itself from being haled into court in any particular state"). Therefore, if the Defendants wanted to avoid being sued in Minnesota, they had the option to not solicit consumers in the state. Defendants' practice of collecting consumers' information and providing it to lenders is more than a minimal contact with the state.

Based on the foregoing, the Court concludes that the nature and quality of Defendants' contacts with Minnesota weigh in favor of exercising personal jurisdiction.

### 2. Quantity of Contacts

As to the second factor, Defendants' contacts are of sufficient quantity given the sheer scope of outreach to consumers. A single contact can give rise to personal jurisdiction. *See Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1020 (D. Minn. 2008) (noting that a single, deliberate contact will support personal jurisdiction over a suit related to that contact). Here, Defendants made thousands of contacts with known Minnesotans, including sending e-mails, engaging in information transactions, and

10

soliciting business through a Google AdWords marketing campaign. Defendants required them to completely fill out an application in which they provided home address, place of employment, contact information and bank information. Defendants' conduct in requesting this information in order to pair the customer with a lender is the conduct that is at issue in this lawsuit.

The Court concludes that the quantity of Defendants' contacts weighs in favor of exercising personal jurisdiction.

### 3. Contacts' Connection to Causes of Action

Regarding the third factor, Plaintiffs' causes of action are sufficiently related to Defendants' contacts with the forum state. As noted previously, all of Plaintiffs' claims relate to Defendants' role in facilitating payday loans, which Defendants effectively acknowledged when they removed the case to federal court. (Doc. No. 1 ¶¶ 15-18 ("This Court has supplemental jurisdiction over the remaining state law claims in this action, because such claims are closely related to and arise out of the same set of operative facts as the federal law claim.").) Defendants' e-mails directed at Minnesotans all concerned the payday-loan scheme. Defendants' Google AdWords campaign also specifically targeted Minnesota and potential Minnesota borrowers. Thus, the conduct giving rise to Plaintiffs' causes of action—the lead-generating operation and payday-lending scheme—took place in Minnesota. *See Myers v. Casino Queen, Inc.*, 689 F.3d 904, 913 (8th Cir. 2012) (noting that although the plaintiff's "injuries did not arise out of [the defendant's] advertising activities in a strict proximate cause sense, [the plaintiff's] injuries are

nonetheless related to [the defendant's] advertising activities because he was injured after responding to the solicitation").

Viewing these contacts in the aggregate, the Court concludes that the third factor weighs in favor of exercising personal jurisdiction.

### 4. Reasonableness Factors

Finally, the Court considers whether the interests of the forum state and the convenience of the parties weigh in favor of exercising jurisdiction. *See Wessels*, 65 F.3d at 1432. The Court observes, as did the Minnesota Supreme Court, that "Minnesota has a strong interest in protecting its residents from predatory lending, enforcing consumer protection laws, and providing a forum for litigating violations of its payday-lending statutes." *Rilley I*, 884 N.W.2d at 338 (citing *Softbrands Mfg., Inc. v. Missing Link Consulting, Inc.*, Civ. No. 04-3900, 2004 WL 2944112, at *7 (D. Minn. Dec. 20, 2004)). Moreover, as residents of Minnesota, it would be convenient for Plaintiffs to litigate their case in this forum, and Defendants have offered no compelling reason why litigating in Minnesota would be inconvenient. The Court therefore concludes that exercising personal jurisdiction over Defendants is reasonable and does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

### C. Jurisdiction over Selling Source

In its August 30, 2017 Order, the Court indicated that it would have likely "delayed dismissing Selling Source to allow Plaintiffs the opportunity to conduct discovery into the operation of Defendants to determine whether their corporate structure justified the Court exercising personal jurisdiction." (Doc. No. 62 at 7 n.3 (citing Wright

& Miller § 1069.4).) Since then, discovery has revealed evidence sufficient for the Court to conclude that it is proper to exercise personal jurisdiction over Selling Source.

Courts impute the actions of a subsidiary to a parent company and therefore have jurisdiction over the parent company when the separate corporate status of the two is formal only and the subsidiary is merely a vehicle by which the parent company is conducting business in a particular jurisdiction. *See Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (holding that for personal jurisdiction purposes, "the fiction of corporate entity may be disregarded, where one corporation is so organized and controlled and its affairs are so conducted that it is, in fact, a mere instrumentality or adjunct of another corporation"); *Martin v. ReliaStar Life Ins. Co.*, 710 F. Supp. 2d 875, 882-86 (D. Minn. 2010) (same); *Enterprise Rent-A-Car Co. v. U-Haul Int'l, Inc.*, 327 F. Supp. 2d 1032 (E.D. Mo. 2004) (concluding that vehicle rental company's interactive websites constituted minimum contacts with forum in trademark infringement suit to comport with due process, even though alleged infringement was owned and used by company's subsidiary when company and subsidiary had close, symbiotic relationship); *see generally* Wright & Miller § 1069.4 (collecting cases).

Here, Selling Source wholly facilitates the Minnesota-related payday-lending activities of MoneyMutual and PartnerWeekly. Specifically, Selling Source is the sole owner of PartnerWeekly and MoneyMutual, and executive leaders occupy roles in both Selling Source and PartnerWeekly. For example, Glenn McKay simultaneously served as the CEO of Selling Source and President of PartnerWeekly. (Albanese Decl. ¶ 12, Ex. 6.) According to McKay, Selling Source does not have annual meetings, bylaws, and

"does not follow . . . corporate formalities." (Albanese Decl. ¶ 12, Ex. 7; *see also id.* ¶ 12, Ex. 2 ("McKay Dep.") at 25, 28.) Evidence also indicates that Selling Source and PartnerWeekly also shared a Chief Technology Officer. (*Id.*) Moreover, the content of the MoneyMutual website, which was a touchpoint for most contacts with Minnesotans, was developed with input from counsel for Selling Source. (McKay Dep. at 27.) And Selling Source employees sent marketing e-mails for PartnerWeekly, including to consumers located in Minnesota. (Madsen Dep. at 13-14.) Taken together, these facts indicate that for the purposes of jurisdiction, Selling Source is sufficiently indistinguishable from MoneyMutual and PartnerWeekly. The Court therefore concludes that it has jurisdiction over Selling Source.

In sum, the Court concludes that Defendants have sufficient minimum contacts with Minnesota to support the exercise of personal jurisdiction.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (Doc. No. [95]) is **DENIED**.

Dated: October 3, 2018              s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge